# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN CARTER, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RAILWORKS TRACK SYSTEM INC., Corporation,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**VIOLATIONS OF 38 U.S.C. §4301 ET SEQ;**<br><br>**FILING FEE WAIVED PER 38 U.S.C. §4323(h)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Carter ("Plaintiff") hereby complains against Defendant Railworks Track Systems, Inc. ("Railworks") as follows:

## I.　NATURE OF THE ACTION

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq*. ("USERRA"). It is brought by Plaintiff against Defendant Railworks.

## II.　PARTIES

2. Plaintiff is a citizen of the United States and a resident of the State of Washington. Plaintiff was employed by Defendant at 247 U.S. Highway 12 Chehalis, Washington 98532, as a Thermite Welder. Plaintiff is also in the Oregon Army National Guard ("OANG").

3. At all relevant times, Plaintiff was a qualified employee and member of the uniformed services for the purposes of 38 U.S.C. §4303(3), (9) and (16).

4. Plaintiff is informed, believes and alleges based on that information and belief, that Defendant Railworks, is a corporation with its principal place of business at 5 Penn Plaza New York, New York 10001. At all times relevant, Railworks was and is an employer for purposes of 38 U.S.C. §4303 (4)(A).

5. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of defendants, or any of them herein, such individuals at all times acted on behalf of defendants named in this action within the scope of their respective employments and agencies.

6. Whenever and wherever reference is made in this Complaint to any conduct of defendants, or any of them, such allegations or references shall also be deemed to mean the conduct of each defendant, acting individually, jointly and severally.

7. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that all times mentioned in this complaint, defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

### III.  JURISDICTION AND VENUE

8. The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331, as conferred by 38 U.S.C. §4323(b)(3).

9. Venue is proper because Railworks does business in and has a location in this district, as provided in 38 U.S.C. §4323(c)(2) and 28 U.S.C. §1391(b).

10. Pursuant to 38 U.S.C. § 4323(h), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

### IV.  GENERAL ALLEGATIONS

11. Plaintiff re-alleges and incorporates herein by reference each and every

allegation contained within paragraphs 1 through 10, inclusive, as though set forth at length herein and made a part hereof.

12. Plaintiff John Carter is a resident of Yelm, Washington and a member of the Oregon Army National Guard. Plaintiff performed various periods of military service during his employment with Defendant.

13. Plaintiff began working for Defendant in September of 2016 as a Thermite Welder. When he was hired, Plaintiff informed Defendant of his membership in the OANG and of his monthly military service obligations, including his two-week annual training obligation. Mark Masters, Defendant's manpower and scheduling manager, told Plaintiff his military obligations would be would not be a problem for Railworks.

14. Plaintiff reported to Mr. Masters for scheduling. Mr. Masters told Plaintiff welders would be placed on maintenance crews or other prevailing jobs if welding specific work was slow, and that welders would always have opportunities for work.

15. Plaintiff gave Mr. Masters a copy of his annual military "drill" schedule and would also give several days' notice prior to any upcoming military obligation.

16. Mr. Masters, as a part of his scheduling responsibilities, would provide plaintiff, and other employees, with their next week's work schedules the previous Friday.

17. In January 2017, Plaintiff began to experience friction with Mr. Masters specific to scheduling around his military service absences.

18. In March 2017 the friction between Plaintiff and Mr. Masters worsened when Plaintiff left for military training. Upon his return, Mr. Masters stopped actively providing Plaintiff with a weekly work schedule as he had done previously and continued to do for other employees. Plaintiff was forced to proactively reach out to Mr. Masters for a work schedule.

**COMPLAINT FOR DAMAGES**

19. In April 2017, Defendant would no longer schedule Plaintiff for welding jobs, and merely scheduled him as a regular laborer, instead scheduling more junior workers for welding jobs.

20. Eventually Defendant completely stopped scheduling Plaintiff for regular weekly work, only bringing Plaintiff in occasionally when there were no other welders available.

21. Since Plaintiff started working with Defendant it was not uncommon for workers to occasionally arrange for work with a job foreman directly. Since Defendant had ceased scheduling Plaintiff for regular work, Plaintiff was forced to coordinate directly with other foremen to maintain work hours, often with foreman Bob Holt.

22. After several weeks of coordinating directly with Mr. Holt for work, Mr. Masters confronted Plaintiff, stating he was not permitted to coordinate for work directly with other foremen. Mr. Masters also told Plaintiff there wasn't any work for him and his military obligations were becoming an inconvenience.

23. In or about May 2017, Plaintiff left for his annual training period. As soon as Plaintiff returned, he called Mr. Masters to say he would be available for work the following Monday.

24. Plaintiff waited several days but Mr. Masters never returned the call. In the absence of a schedule from Mr. Masters Plaintiff coordinated for work with Mr. Holt.

25. Plaintiff reported for work with Mr. Holt the following Monday. While on the job site with Mr. Holt, Plaintiff received a phone call from Mr. Masters who forcibly told Plaintiff it wasn't his job to contact Plaintiff to coordinate work, it was Plaintiff's job to contact him. Mr. Masters also told Plaintiff his leaving for the army is getting really old and it interferes with scheduling.

26. Approximately two weeks later, Plaintiff was unexpectedly activated to

military service to fight fires in Oregon. Plaintiff provided a copy of his activation orders to Mr. Masters who told Plaintiff he didn't want his military orders he wanted someone who can work.

27. Plaintiff returned mid-week after 20 days of fighting fires and called Mr. Masters to give notice of his return and request a work schedule. Plaintiff could not reach Mr. Masters but left him a voicemail. Mr. Masters did not return Plaintiff's call until Sunday night, he demanded Plaintiff report to a job in Seattle at 6:00 a.m. the next morning. Plaintiff told Mr. Masters he had just returned from active duty and was over four hours away in Salem, Oregon without his tools and equipment. Mr. Masters threatened Plaintiff's job, saying if he wanted to remain employed he had better be in Seattle in the morning.

28. Plaintiff reported to the Seattle job as directed and within 24 hours. When he arrived, however, the only other co-worker assigned to work with him was unexpectedly called away to support a rail accident at another site.

29. As a result, Defendant sent Dave Lund, Mr. Masters' manager, to Seattle to check-in on Plaintiff. Plaintiff complained to Mr. Lund about Mr. Masters' treatment of him, the friction and scheduling issues. Mr. Lund told Plaintiff he would talk to Mr. Masters about these issues.

30. Defendant offers an annual raise to its employees. Mr. Masters assured Plaintiff during compensation negotiations when he was hired, he would be eligible for the annual raise after several months of employment, but when Plaintiff inquired with Defendant about his raise, he was told he was not eligible because he was already paid too much.

31. Bob Holt and Jim Globe suggested Plaintiff pursue one of Defendant's Track Inspector positions because he was Federal Railroad Administration (FRA) Certified. Track inspectors are required to be FRA certified because they must be trained to inspect railroad track work in accordance with federal regulations.

32. Plaintiff approached Defendant's management about the Track Inspector position, but Mr. Masters told him was told he was not eligible because of his military absences.

33. On or around September 2017 Plaintiff quit working for Defendant.

## V. COUNT ONE

## Violations of 38 U.S.C. §4301 et seq.

34. Plaintiff hereby alleges and incorporates all paragraphs 1-33 above by reference herein.

35. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

36. Section 4311 of USERRA provides, in relevant part, that a person "who is a member of, …performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied…any benefit of employment by an employer on the basis of that membership,…performance of service, or obligation."

37. Section 4311(c) further provides, in relevant part, that "[a]n employer shall be considered to have engaged in actions prohibited…if the person's membership…or obligation for service in the uniformed services is a motivating factor in the employer's action."

38. Plaintiff's status as a military member was motivating factor in Defendant's denial of Plaintiff's employment benefits, including, but not limited to, subjecting Plaintiff to unfair scheduling practices different from other employees, failing to grant plaintiff a yearly raise, and denying Plaintiff promotion opportunities, ultimately resulting in Plaintiff's constructive discharge.

39. Defendants, and each of them, knowingly and willfully violated USERRA by and among other ways, discriminating against Plaintiff, and by denying him benefits of employment "on the basis of" his "obligation to perform service in a uniformed service."

40. As a direct and proximate result of the conduct of Defendant as set forth in this count, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all to his damage in an amount to be proven at trial.

41. Plaintiff alleges such violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

42. Pursuant to 38 U.S.C. §4323(h), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and other litigation expenses.

## VI.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff prays for relief against Defendant as follows:

1. Declare that the acts and practices complained of herein are unlawful and are in violation of USERRA, 38 U.S.C. §4301, *et seq.*;

2. Require that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied him as a result of the unlawful acts and practices under USERRA described herein;

3. Fees and expenses, including attorneys' fees and costs pursuant to 38 U.S.C. §4323(h);

4. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

5. Order that Defendants pay liquidated damages in an amount

equal to the amount of lost compensation and other benefits suffered by reason of Defendants' willful violations of USERRA;

      6.     Grant an award for costs of suit incurred; and, Grant such other and further relief as may be just, and proper and which Plaintiff may be entitled to under all applicable laws.

Dated: July 8, 2019         *s/s Daniel Kalish*
Daniel Kalish, WSBA 35815
**HKM EMPLOYMENT ATTORNEYS LLP**
Daniel Kalish, WSBA 35815
600 Stewart Street, Suite 901
Seattle, WA 98101
206-826-5354
dkalish@hkm.com

Attorneys for Plaintiff John Carter

8

**COMPLAINT FOR DAMAGES**